FILED by _____ D.C.

FEB 2 2 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 03-62251-CIV-MARTINEZ-BANDSTRA**

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

vs.

OPSIS TECHNOLOGIES INTERNATIONAL,
INC. et. al.,

     Defendants.

_____/

**CLOSED
CIVIL
CASE**

## FINAL JUDGMENT AS TO DEFENDANTS MICHAEL KORDICH AND VENTURE CAPITAL HOLDINGS LLC

Plaintiff Securities and Exchange Commission ("Commission") commenced this action on December 22, 2003 by filing a Complaint for injunctive and other relief.  Defendants Michael Kordich and Venture Capital Holdings LLC ("VCH") ("Defendants") both previously consented to the Court's jurisdiction over them and over the subject matter of this action.  Defendants also consented to the entry of Patrial Final Consent Judgments, which the Court entered on March 3, 2005, permanently enjoining Defendants from further violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].  However, the partial consent decrees left it to this Court to determine the amounts, if any, of disgorgement, prejudgment interest, and civil penalties that the Defendants will be required to pay.  After considering the parties' submissions concerning disgorgement, prejudgment interest, and civil

penalties and for the reasons discussed herein, this Court finds that Defendants should be held jointly and severally liable for the disgorgement of the full amount of the offering proceeds, that prejudgment interest should be applied to these proceeds, and that third tier civil penalties should be imposed on Defendants.

First, this Court finds that Defendants Kordich and VCH should disgorge the full amount of the proceeds of the fraudulent offering and pay prejudgment interest on that amount. "It is a well settled principle that joint and several liability is appropriate in securities laws cases where two or more individuals or entities have close relationships in engaging in illegal conduct." *SEC v. Calvo*, 378 F.3d 1211, 1215 (11th Cir. 2004). This Court also notes that "[t]his holds true even where one defendant is more culpable than another." *Id.* In the Partial Final Consent Judgments entered by this Court, the parties agreed that, for the purposes of determining the amount of disgorgement, prejudgement interest, and civil penalties, the Defendants would be "precluded from arguing that . . . [they] did not violate the federal securities laws in the manner described in the complaint and in the Plaintiff's Statement of Undisputed Facts, filed December 17, 2004 (D.E. No. 46), and . . . for the purposes of such determination, the allegations of the Complaint and the Plaintiff's Statement of Undisputed Material Facts shall be accepted as and deemed to be true by the Court." (D.E. No. 57 at 5); (D.E. No. 58 at 5). This Court finds that taking the allegations in the complaint and Plaintiff's Statement of Undisputed Facts as true, it is clear that Defendants Kordich and VCH were closely involved with the other Defendants in this action in their scheme to defraud investors.

In the Complaint, Plaintiffs stated:

Through cold calls, correspondence, the foregoing offering memoranda and an Opsis

-2-

website, the defendants knowingly or recklessly misrepresented that: (a) an initial public offering ("IPO") of Opsis stock was imminent; (b) investors were assured a profit on their purchase of Opsis securities, either though a repurchase of their securities by Opsis or by selling their shares in secondary market trading; (c) Opsis held rights to patented "smart card" technology; and (d) Opsis had entered into a partnership with Carnegie-Mellon University to explore the use of "smart cards" to ensure privacy and security in online communications and transactions.

(D.E. No. 1 at 5).[1]  Plaintiffs have also presented sufficient allegations of Defendants Kordich and VCH's close involvement in this scheme.

Defendant Kordich was a founding principal and managing director of VCH.  (D.E. No. 46 at 1).  Defendants Opsis and VCH entered into a consulting agreement where VCH agreed to become Opsis's exclusive financial agent.  *Id.* at 2.  The consulting agreement also provided that Opsis would pay VCH a commission on any debt investment by any entity or individual introduced to Opsis through VCH.  *Id.*  "Kordich and VCH, in concert with their codefendants, raised a total of approximately $4,598,517 from approximately 108 investors in various states and foreign countries by selling Opsis securities."  *Id.* at 4.

In soliciting investors, Kordich referred potential investors to Opsis's website and distributed Opsis's Executive Summary to investors and potential investors.  *Id.* at 4.  The website and the Executive Summary contained false statements about patent rights owned by Opsis.  *Id.* at 4-5.  Kordich was aware of these statements regarding patent rights, made no attempt to verify these claims, and was aware that Opsis had failed in its attempts to acquire the company that owned particular patent rights.  *Id.* at 5.

Kordich also distributed a document known as a "White Paper" to potential investors.  *Id.*

---

[1]The Complaint also alleges that "Defendants VCH, M&T, Kordich, Catapano and Andrews also operated as unregistered broker-dealers in connection with . . . offers and sales of Opsis securities."  (D.E. No. 1 at 10).

-3-

at 6.  In this White Paper, Opsis claimed to have a partnership with Carnegie Mellon University to assist with the development of Opsis's product.  *Id.*  This statement was false as there was no partnership between Carnegie Mellon University and Opsis.  *Id.*  Kordich had no knowledge of this partnership and never took steps to verify that such partnership existed.  *Id.*  Kordich also offered some investors "stock repurchase agreements" in which Opsis stated it would repurchase its stock for a guaranteed profit.  *Id.* at 6.  "Kordich's offers to these investors concerning stock repurchases and guaranteed profits were materially false and misleading because Opsis lacked the financial ability to repurchase Opsis stock and any such repurchase would require new financing."  *Id.* at 7.  Kordich was aware at the time he offered these stock repurchase agreements that Opsis did not have the financial ability to repurchase the stock.  *Id.*

Kordich also represented to investors and potential investors "that Opsis stock would soon be publicly traded through an IPO or merger with a public company." *Id.* at 8.  Kordich also represented that the stock "would be publicly traded on the NASDAQ under the stock symbol OPSS" and that the stock would trade in the secondary market at a price of $10.  *Id.*  All of these statements "were materially false and misleading."  *Id.*  When Kordich made these representations, he did not attempt to determine whether these statements were true.  *Id.* at 9. Furthermore, "[w]hen Kordich made these misrepresentations to investors, he knew that Opsis lacked the assets, capital and financing necessary to conduct a public offering."  *Id.*  In addition, Kordich and VCH did not keep records of the stock sale proceeds that they obtained.  *Id.* at 10. The proceeds were deposited into VCH's bank accounts and used for their personal and business expenses.  *Id.*

Based on this evidence offered by the Plaintiff, this Court finds Defendants' arguments

-4-

that they are somehow lesser offenders and should not be held jointly and severally liable are

without merit.  It is clear to the Court that Defendants Kordich and VCH were necessary

participants in the scheme at issue in this case.  Therefore, this Court will hold Defendants jointly

and severally liable for the disgorgement of the full amount of the offering proceeds, which is

$4,598,517.[2]

-------------------

[2]Defendants also argue that they should not be held responsible for the full $4,598,517 amount
because this does not represent their actual profits from the scheme.  In addition, Defendants argue that any
profit they received from the scheme should be reduced by various expenses and by an amount loaned to
Opsis. (D.E. No. 62 at 6).  This Court disagrees.

The Court notes that "[t]he SEC is entitled to disgorgement upon producing a reasonable
approximation of a defendant's ill-gotten gains." *Calvo*, 278 F.3d at 1217.  "The burden then shifts to the
defendant to demonstrate that the SEC's estimate is not a reasonable approximation."  However, here,
Defendants do not challenge the SEC's statement that the amount of ill-gotten gains from the fraudulent
scheme was $4,598,517. *See* (D.E. No. 38, Declaration of James J. Kasmarik).  Defendants merely
challenge that this was the amount of profits that they in particular received and therefore should be held
responsible for.  As explained above, the Court has already found that Defendants should be held jointly
and severally liable for the full amount because of their central participation in the fraudulent scheme with
the other Defendants.  However, the Court also notes that Plaintiffs have not provided anything other than
one vague and unexplained exhibit which appears to be some sort of internal document that does not fully
support Defendants' claim that they received $557,350 from the sale of Opsis stock and in no way supports
their claims that these are the only profits they received. *See* (D.E. No. 62 at 10). *See also* (D.E. No. 62,
Exh. E-4) (which accounts for only $337,350 of this profit).  The Court especially notes that as stated in
Plaintiff's Statement of Undisputed Facts, which this Court takes as true for purposes of this
determination, *see* (D.E. No. 57 at 5); (D.E. No. 58 at 5), Kordich and VCH did not keep records of the
stock sale proceeds that they obtained. (D.E. No. 46 at 10.)  Furthermore, the proceeds were deposited into
VCH's bank accounts and used for their personal and business expenses. *Id.*  The Eleventh Circuit has
stated "where a defendant's record-keeping or lack thereof has so obscured matters that calculating the
exact amount of illicit gains cannot be accomplished without incurring inordinate expense, it is well within
the district court's discretion to rule that the amount of disgorgement will be more readily measurable
proceeds received from the unlawful transactions." *Calvo*, 378 F.3d at 1218.

The Court is also unwilling to deduct the transactional costs from the disgorgement amount as "the
overwhelming weight of authority holds that securities law violators may not offset their disgorgement
liability with business expenses." *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1086-87 (D.N.J.
1996) (citations omitted).  The Court is also unwilling to deduct these so-called transactional costs because
Defendants have not demonstrated that these costs were not incurred in the propogation of the fraudulent
scheme.  Defendants also ask the Court to reduce the amount of disgorgement by the amounts they loaned
to co-Defendant Opsis.  However, this Court agrees with the SEC's characterization of this argument and
notes that if Defendants loaned Opsis money to keep it in business than this arguably allowed Opsis and the
other Defendant to further continue to perpetuate their fraudulent scheme.  Furthermore, this also supports
the Court's conclusion that Defendants Kordich and VCH were closely related to Opsis and the other

Having found Defendants liable for the full amount of the offering proceeds, the Court will also order Defendants to pay prejudgment interest on this amount.  This amount shall be calculated by applying the IRS underpayment rate and compounding the interest quarterly.  *See* 26 U.S.C. § 6621 (a)(2).  *See also* 17 C.F.R. § 201.600(b).  Therefore, the Court shall order Defendants to pay $210,436, which is the prejudgment interest amount through the date the Partial Final Consent Judgments were entered.

The Court also finds that Defendants should be required to pay civil penalties.  The statutes provide for first tier, second tier and third tier penalties.  *See* 15 U.S.C. § 77t(d)(2)(c); 15 U.S.C.  § 78u(d)(3)(B)(iii).  The amount of the civil penalty is determined "in light of the facts and circumstances." 15 U.S.C. § 77t(d)(2)(A).  For each violation, under the first tier penalties, "the amount of the penalty shall not exceed the greater of (i) $5,000 for a natural person or $50,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation." *Id.*  If the violation involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" the second tier penalties apply.  15 U.S.C. § 77t(d)(2)(B).  Under the second tier penalties "the amount of penalty for each such violation shall not exceed the greater of (i) $50,000 for a natural person or $250,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation." *Id.*  Finally, if the violation involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement; and such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" then the third tier penalties apply. 15 U.S.C. § 77t(d)(2)(C).  Under the third tier penalties, "the amount of penalty for each such

Defendants in carrying out this fraudulent scheme.

-6-

violation shall not exceed the greater of (I) $100,000 for a natural person or $500,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation." *Id.* The Court also notes that the maximum penalty amounts have been adjusted to compensate for inflation pursuant to the Debt Collection Improvement Act of 1996 and the maximum penalty that can be imposed against a natural person is $110,000 and the maximum amount that can be imposed against an entity is $550,000. *See* 17 C.F.R. §§ 201.1001 & 201.1002 (Table II).

Here, in light of the facts and circumstances, this Court will impose the third tier penalties. The facts in this case demonstrate that the violations involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." Kordich and VCH in soliciting investors for Opsis either deliberately or recklessly misrepresented several key facts regarding the investment. Furthermore, Defendants appear to concede this point as they have argued for an imposition of second tier penalties which contains the same requirement that the violation have been committed with "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement regulatory requirement." The Court also finds that the second requirement for imposing third tier penalties has been met as the violations have either "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Investors suffered substantial losses in this situation where they were influenced by Defendants' misrepresentations in deciding whether to invest in a company that in reality has never generated any revenue. *See* (D.E. No. 46 at 2). Therefore, this Court will impose third tier civil penalties on Defendants Kordich and VCH.

**ORDERED AND ADJUDGED** that

1.      Kordich and VCH are jointly and severally liable for disgorgement of $4,598,517,
representing the proceeds derived from the conduct alleged in the Complaint, together with
prejudgment interest thereon in the amount of $210,436, for a total of $4,808,953.

2.      Defendant Kordich shall pay a civil penalty in the amount of $110,000 and
Defendant VCH shall pay a civil penalty in the amount of $550,000 pursuant to Section 20(d) of
the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §
78u(d)(3)].

3.      Defendants shall satisfy these obligations within (10) business days after entry of
this Final Judgment by making payment to the Clerk of this Court, together with a cover letter
identifying the defendant; setting forth the title and civil action number of this litigation and the
name of this Court; and specifying that payment is made pursuant to this Final Judgment.  By
making this payment, Defendants relinquish all legal and equitable right, title and interest in such
finds, and no part of the funds shall be returned to Defendants, their heirs, successor or assigns.
Defendants shall simultaneously transmit copies of such payment, front and back, as well as any
accompanying correspondence, to the Commission, c/o Howard Sklar, Senior Attorney, U.S.
Securities and Exchange Commission, Northeast Regional Office, Three World Financial Center,
Room 4300, New York, New York 10281-1022.  Such transmission shall be made under cover of
a letter that identifies the defendant, the title and civil action number of this litigation, the name of
this Court, and the Commission case number "NY-07168."  The Clerk shall deposit the funds into
an interest bearing account with the Court Registry Investment System ("CRIS Account").  These
funds, together with any interest with any interest and income earned thereon (collectively, the

"Fund") shall be held by the CRIS Account until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Defendants shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

4.      The Commission may enforce the Court's judgment for disgorgement, prejudgment interest, and civil penalties by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after ten days following entry of this Final Judgment.

5.      This Court shall retain jurisdiction of this matter for purposes of enforcing the terms of this Final Judgment.

6.      This Case is **CLOSED** and all pending motions are **DENIED as MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 2 day of February, 2006.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Bandstra
All Counsel of Record

-9-